UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. SAVOCA, | ) | CASE NO.: 1:06CV1747 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On July 19, 2006, Petitioner Thomas Savoca, a federal prisoner currently incarcerated at a penitentiary in Big Sandy, Kentucky, filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Respondent United States of America filed a response in opposition to the motion on August 4, 2006. For the following reasons, the Court DENIES Petitioner's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 16, 2003, Petitioner was indicted on the following charges: one count of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371; four counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) & (d); and two counts of possession of a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924© . Petitioner, with counsel, entered a not guilty plea before this Court.

On June 29, 2004, a jury found Petitioner guilty of each count in the indictment. On November 18, 2004, this Court sentenced Petitioner to 927 months imprisonment. During sentencing, this Court also imposed an alternative sentence of seventy years in anticipation of the

sentencing guidelines becoming advisory.  On November 24, 2004, Petitioner filed a Notice of Appeal.  Petitioner's convictions were affirmed, and the matter was remanded to permit entry of this Court's alternative sentence of seventy years. Petitioner then filed a timely motion under § 2255 with this Court.

In his § 2255 motion, Petitioner raises the following grounds for relief and facts in support:

A.   **Ground one:** The United States deprived the movant of his due process rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments when FBI Agent Scott Wilson, Painesville, Ohio, tampered with evidence and manufactured evidence germane to the Painesville, Ohio bank robbery.

**Supporting FACTS:** The record purports to show that a blue Chevy van was used in the Painesville, Ohio bank robbery.  The record demonstrates that the same van was used in Marietta, Ohio to re-enact a vehicular accident relating to the arrest incident.  The United States had possession of a blue van and re-enacted the incident.  The evidence constitutes a total fabrication and was severely prejudicial to the movant during his proceedings.  The movant's van was gold in color.  Remaley testified in support of the fabricated video that the movant's van made a U-turn in the middle of the road and proceeded in the opposite direction.  Officer Starling contradicted this testimony and attested that the movant went around the Medical Building and had to come out due to the absence of an exit.

B.   **Ground two:** Agents of the United States committed perjury, about which the Prosecutor knew or had reason to know, by testifying that the fake video [sic] was the movant's vehicle in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.

**Supporting FACTS:** Jack Remaley testified under oath, in the prosecution's case-in-chief, that the fake video depicted the movant's vehicle.  The U.S. Attorney was aware of this perjury, and procured a ruling that the fake video could be used for impeachment purposes only.  This aspect of the record adds truth to the movant's arguments asserting violation of the movant's constitutional rights at the most "critical stages" of the investigation, pre-trial proceedings, and trial proceedings.  The existence of this evidence taints the entire proceeding in violation of the movant's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.  The movant's allegations of perjury are corroborated by the conflicting testimony regarding the occurrences incident to the arrest.  Remaley testified that the video in question made a U-turn in the middle of the road and proceeded in the opposite direction.  Conversely, Officer Starling testified that the video depicts the movant proceeding around the Medical Building and having to come out due to the lack of an exit.

C. **Ground three:** The United States violated the movant's rights under the Fifth, Sixth, and Fourteenth Amendments when it conducted an unfair and partial photo lineup and utilized the results to secure an arrest, indictment, and conviction.

**Supporting FACTS:** During a purported photo lineup, the FBI violated the movant's rights to a fair and impartial lineup by circling the movant's picture and asking the witness, "Don't you see him now?" The lineup violated the movant's rights to due process and a fair and impartial trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

D. **Ground four:** During the trial proceedings, Counsel violated Petitioner's right to effective assistance of counsel guaranteed by the Sixth Amendment to the U.S. Constitution.

**Supporting FACTS:** Mr. Roger Davidson, counsel for the movant, provided deficient representation which prejudiced the movant during the trial proceedings. During the most critical stages of the proceedings, the movant did not receive a fair trial due to the failure of counsel to conduct an investigation of the facts. The outcome of the proceeding would have been different, i.e. the movant would have been acquitted, in the absence of the ineffective assistance of counsel.

E. **Ground five:** The movant's Fourth Amendment rights were violated when the court failed to conduct a *Franks* hearing with respect to evidence tampered with by the police.

**Supporting FACTS:** The foregoing facts are incorporated herein by reference as fully and effectively as if said facts were set forth and repeated herein verbatim. These facts establish a Fourth Amendment question which should have prompted a *Franks* hearing, especially with respect to the fabrication of and tampering with evidence purportedly seized and introduced by the prosecution. The introduction of this evidence also resulted in an abridgement of the movant's right to a fair and impartial trial.

F. **Ground six:** The movant was denied his right to effective assistance when counsel failed to request expert witnesses and move to suppress all pretrial evidence and bar its entry at trial in violation of the Sixth Amendment.

**Supporting FACTS:** The movant filed a civil complaint regarding ineffective assistance of counsel, perjury, and impeachment of agents, law enforcement officers, and legal counsel. Counsel read the complaint to the court. He advanced this complaint before the court, and it was his Sixth Amendment duty to ask for expert witnesses and suppress all pre-trial evidence from the record of the proceedings. The evidence was essential to the conviction of the movant. Counsel's failure to pursue this line of defense constitutes ineffective assistance of counsel in violation of the Sixth Amendment, and the introduction of this evidence created a due process

violation of the most basic sort.

G. **Ground seven:** The movant's Fifth and Fourteenth Amendment rights to Due Process rights were violated by the denial of the movant's request for a special hearing (Docket Sheet No. 80) to proceed with criminal charges on the persons enumerated in the criminal complaint filed by the movant.

**Supporting FACTS:** The movant requested that this Honorable Court conduct a special hearing with respect to the referral of charges arising from the violation of the movant's constitutional rights. These persons willfully, intentionally, and knowingly violated the plaintiff's constitutional rights, about which the court was aware prior to the trial and the sentencing hearing. Due process and freedom from the criminal conduct of others is a right guaranteed to all citizens by the U.S. Constitution.

H. **Ground eight:** The movant's Fifth and Sixth Amendment rights to Due Process and the effective assistance of counsel were violated with respect to the evidence which was tainted by refabrication and tampering.

**Supporting FACTS:** U.S. Attorney Gary Arbeznik agreed not to enter the video with was phoney [sic] and refabricated [sic] into evidence. During the early pre-trial stages, which were "critical stages" for purposes of an evaluation of prejudice, the U.S. Attorney stated in a suppression hearing that he would not submit the video unless it was necessitated by impeachment concerns only. Defense counsel agreed with this stipulation, and it was violated during all phases of the trial. Counsel's stipulation to this arrangement proves that he violated the movant's Sixth Amendment right to the effective assistance of counsel. Counsel was vested with a duty to move for suppression of all evidence obtained during pre-trial and trial proceedings. The evidence was subject to suppression during this critical stage of the proceeding. This is a "critical stage" because the period of time encompasses the period during which counsel was vested with a constitutionally-imposed duty to conduct a reasonable investigation of the case.

I. **Ground nine:** The movant was deprived of his Sixth Amendment right to counsel during critical stages of the proceeding, which prejudiced the movant to such a great extent that it changed the outcome of the trial.

**Supporting FACTS:** The prosecution introduced physical evidence and eyewitness' identification, especially an unconstitutional photo lineup, that were procured during critical stages of the prosecution, i.e. the investigative phase and charging stage, at a time when the movant was wholly without counsel. Despite the importunities of the movant, counsel failed and refused to move the court to suppress this evidence seized during such critical stages. This failure constitutes ineffective counsel in violation of the Sixth Amendment. The evidence affected the outcome of the trial in that the movant would never have been convicted in the absence of such evidence.

**APPLICABLE LAW**

Under 28 U.S.C. § 2255, a federal inmate is provided with a post-conviction means of collaterally attacking his conviction or sentence. *In re Gregory,* 181 F.3d 713, 714 (6th Cir. 1999). Motions brought under § 2255 are the sole means by which a federal prisoner can collaterally attack a conviction or sentence that he alleges to be in violation of federal law. *See United States v. Davis,* 417 U.S. 333(1974); *United States v. Cohen,* 593 F.2d 766, 770 (6th Cir. 1979).

Under § 2255 there are four grounds upon which federal prisoners may challenge their conviction or sentence:  (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *United States v. Hill,* 368 U.S. 424, 426-27 (1962).

In order to prevail on a § 2255 motion alleging constitutional error, the petitioner must establish that an error of constitutional magnitude existed that had a substantial and injurious effect or influence on the proceedings. *United States v. McNeil,* 72 F. Supp.2d 801, 803 (N.D. Ohio 1999) (citing *United States v. Watson,* 165 F.3d 486, 488 (6th Cir. 1999)).  In order to prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir. 1990) (citing *United States v. Hill,* 368 U.S. 424, 428 (1968)).

**I.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

The Sixth Circuit has held that ineffective assistance of counsel claims are subject to review in the district court when timely raised in a petitioner's § 2255 motion. *Hughes v. United States,* 258 F.3d 453, 457 n.2 (6th Cir. 2001).  In order to prevail on this type of claim, Petitioner bears the

burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced Petitioner's defense so as to deprive him of his right to a fair trial. *Strickland v. Washington,* 466 U.S. 668 (1984).

To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Court scrutiny of defense counsel review must be "highly deferential." *Id.* at 689. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana,* 350 U.S. 91, 101 (1955). Consequently, while trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland,* 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992) (en banc), *cert. denied,* 508 U.S. 975 (1993).

Petitioner claims that his counsel was ineffective because he failed to conduct an investigation of the facts, request expert witnesses, and suppress all pre-trial evidence.

In *Strickland*, the Supreme Court recognized that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Counsel's duty to the client, therefore, is to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Decisions to call expert witnesses, suppress evidence, and conduct investigation of the facts are all primarily strategic decisions made by counsel. Petitioner has failed to prove that counsel's actions or lack thereof were unreasonable. In fact, Petitioner has offered no evidence in support of his allegations. Petitioner fails to identify any witnesses that counsel could have called, to describe what type of experts counsel should have presented, and to explain that the evidence Petitioner hoped to obtain from witnesses could only have been procured through witness testimony. *See Prewitt v. U.S.*, 83 F.3d 812, 820 (7th Cir. 1996) (requiring specific proof of allegations in support of a § 2255 motion). Furthermore, Petitioner's "allegations of prejudice must be specific, concrete and supported by the evidence - vague, speculative, or conclusory allegations will not suffice." *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir.1988). By offering no evidence in support of his claim, Petitioner has not met his burden.

The record indicates that counsel zealously advocated on behalf of Petitioner throughout the these proceedings. At all stages of the trial process counsel filed various motions on behalf of Petitioner, including the following: a motion to compel discovery of any exculpatory evidence, various document requests, including witness lists and early production of witness statements, a motion to suppress any statements or evidence obtained from an alleged illegal search and seizure, a motion to suppress a suggestive pre-trial identification, and a motion for a directed verdict. There is nothing to suggest that any further actions taken by trial counsel would have altered the result of

Petitioner's trial. Consequently, Petitioner has also failed to meet his burden under *Strickland* to demonstrate prejudice from his counsel's alleged shortcomings.

## II. SIXTH AMENDMENT CLAIMS

The Sixth Amendment right to counsel applies to a person when judicial proceedings have been initiated against him or her. *See United States v. Wade*, 388 U.S. 218 (1967). "[T]he accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Wade*, 388 U.S. at 226 (1967). "The determination whether the hearing is a 'critical stage' requiring the provision of counsel depends . . . upon an analysis 'whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice.'" *Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (quoting *United States v. Wade*, 388 U.S. 218, 227 (1967)). Critical stages have been defined as "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975).

Petitioner claims that he was deprived of effective assistance of counsel during a critical stage of the proceedings. Petitioner is correct that he is entitled to counsel when the "government's role shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 430 (1986). However, herein the photo lineup occurred in June 2003, and Petitioner was indicted for the offense in September 2003. The first indication that Petitioner was in custody appears to be around July 25, 2003 after a car accident. (Exhibit H). Petitioner, therefore, did not have a right to counsel at the photo lineup because the lineup occurred before judicial proceedings were initiated against him. *See Kirby v. Illinois*, 406 U.S. 682 (1972)(holding that other safeguards protect defendants from an abuse of the procedures used during a photo array).

**III. PHOTO LINEUP CLAIM**

Petitioner alleges that the photo lineup violated his rights because it was impermissibly suggestive. Specifically, Petitioner asserts that an FBI agent circled his picture in the array and then asked the identifying witness, Mr. Farmer, "Don't you see him now?" Petitioner claims that this action violated his right to a fair and impartial trial. *United States v. Moore*, 240 Fed. App'x 699, 705 (6th Cir. 2007) (holding that a photographic identification will be set aside if it is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification") (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). The record directly undermines Petitioner's assertions. Mr. Farmer was questioned about the procedure used during the identification as follows: "Did she say anything to you prior to making a selection [concerning to whom the car belonged]?" Mr. Farmer responded, "No." Consequently, the record indicates that the identifying witness was not prompted in any manner by an FBI agent prior to identifying Petitioner. The record, therefore indicates, and Petitioner has failed to rebut, that no governmental agent spoke to Mr. Farmer before he identified Petitioner. Petitioner has failed to demonstrate any conduct that was so impermissibly suggestive as to violate his right to a fair and impartial trial. As such, Petitioner has not demonstrated error in the procedure utilized during the photo array.

**IV. *FRANKS* HEARING CLAIM**

Petitioner asserts that his Fourth Amendment rights were violated when the court failed to hold a *Franks* hearing regarding alleged tampered evidence. In order "[t]o obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that there was an intentional, reckless false statement or omission which was necessary to the finding of probable cause[.]" *United States v. Snyder*, 513 F.3d 813, (8th Cir. 2008)(citing *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir.

2002)). First, it must be demonstrated that "the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his *warrant affidavit*." *Id.* (citing *United States v. Carpenter*, 422 F.3d 738 (8th Cir. 2005))(emphasis added). "The defendant must then show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *Id.* Petitioner has not alleged that any warrant affidavit contained false statements. Not only did Petitioner fail to discuss any warrant affidavit, but he has failed to provide any proof that any allegedly false statements were made. Petitioner has failed to demonstrate just how the facts as incorporated above demonstrate a need for a *Franks* hearing and has mentioned nothing about a warrant affidavit, the very basis for a *Franks* hearing. Consequently, Petitioner has made insufficient allegations to support a claim to a *Franks* hearing.

**V.     MANUFACTURED EVIDENCE CLAIMS**

Petitioner alleges that the videotape shown at trial depicting a gold van driving erratically was manufactured by the government. As a result, Petitioner claims that his case was "severely prejudiced" by this governmental "fabrication." While such a fabrication could support a § 2255 motion, Petitioner has offered no evidence to support his allegation that this videotape was fabricated by the government. The videotape was authenticated prior to its admission at trial and witnesses testified that it depicted actual events. Furthermore, the timestamp on the video was accurate, and nothing in the video suggests that the events depicted were anything other than what the government held them out to be. Without any evidence that the videotape was falsified and with an accurate timestamp supporting the government's claim, the videotape cannot be viewed as a falsification and Petitioner's allegation, therefore, lacks merit.

Petitioner also claims that there are discrepancies between the testimony of Officer Remaley and Officer Starling. Petitioner asserts that because Officer Starling testified about a medical center

and Officer Remaley did not, one of the officers necessarily committed perjury. Petitioner has failed to direct the Court to a portion of Officer Starling's testimony that concerns a medical center. In fact, nothing in Officer Starling's testimony concerns a medical center of any kind. Nothing in the record indicates that the testimony by either Officer Starling or Officer Remaley was perjured. Any discrepancies in their testimonies appear to be based on varying perspectives of the same event. Further, the police cruiser videotapes portraying two cars' perspectives are consistent with each other and with the officers' testimonies. Petitioner, therefore, has failed to demonstrate that any perjured testimony was presented.

## VI. DENIAL OF SPECIAL HEARING

Initially, this Court notes that it is unclear what type of hearing Petition is referring to when he asserts that he was denied a "special hearing." Nevertheless, Petitioner offers no evidence that his request for a special hearing was improperly denied. Petitioner's request was based upon allegations that his constitutional rights had been violated. As detailed above, Petitioner has failed to demonstrate any constitutional error. Therefore, he has offered no evidence to support the necessity of a special hearing.

Petitioner has failed to demonstrate any error in the prior proceedings. Petitioner's § 2255 motion, therefore, is not well taken and is hereby DENIED.

So ordered.

March 31, 2008

/s/ John R. Adams
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT